**FILED**
**DECEMBER 22, 2020**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Guardianship of: | ) | No. 36820-3-III |
| | ) | (consolidated with |
| DOROTHY HELM O'DELL, | ) | No. 36826-2-III) |
| | ) | |
| An Alleged Incapacitated Person. | ) | UNPUBLISHED OPINION |
| | ) | |

PENNELL, C.J. — Dorothy Helm O'Dell appeals orders denying discovery and awarding attorney fees in conjunction with a dismissed guardianship petition. We affirm.

FACTUAL BACKGROUND

Dorothy Helm O'Dell has a history of mental illness and involuntary psychiatric commitment. In October 2015, Ms. Helm O'Dell was committed for nearly two years of psychiatric treatment in South Dakota. During this time, Ms. Helm O'Dell's social worker became concerned about Ms. Helm O'Dell's ability to manage her finances. Ms. Helm

O'Dell owned two rental properties in Kitsap County, Washington, but did not appear to understand the income and expenses related to the properties. Ms. Helm O'Dell also failed to appreciate the nature of other financial matters.

The South Dakota social worker recommended Ms. Helm O'Dell execute a durable power of attorney prior to her release from commitment. The social worker identified Kirstyan Calhoun, a certified professional guardian working out of Yakima, Washington as a potential attorney-in-fact. Ms. Calhoun was selected because Ms. Helm O'Dell sought to live in Yakima, Washington, which was home to her two brothers. A South Dakota attorney prepared the power of attorney. On December 16, 2016, Ms. Helm O'Dell executed a durable power of attorney, in the presence of a notary public, appointing Ms. Calhoun as her attorney-in-fact.

After Ms. Calhoun became Ms. Helm O'Dell's attorney-in-fact, the two signed a service agreement. Under the agreement, Ms. Calhoun agreed to coordinate the sale of Ms. Helm O'Dell's properties so that she could move to Yakima. The agreement also specified Ms. Calhoun's fees.

Ms. Calhoun investigated Ms. Helm O'Dell's Kitsap County properties and found them to be in disrepair. Kitsap County valuation and tax records indicate that, between 2010 and 2016, the combined market value assessment of Ms. Helm O'Dell's two

properties reduced from $242,620 to $138,710. Clerk's Papers (CP) at 254, 258. Ms. Calhoun did not believe Ms. Helm O'Dell had sufficient funds to bring the properties up to code. Ms. Calhoun sold the properties for what may have been less than market value. Proceeds from the sales were used to pay for Ms. Helm O'Dell's care, her move to Yakima, and her housing.

On or about August 8, 2017, Ms. Helm O'Dell moved into an assisted living community in Yakima. Shortly thereafter, Ms. Calhoun received an undated letter from Ms. Helm O'Dell, accusing her brothers of harming her. Ms. Helm O'Dell has several siblings and the letter did not identify which brothers she was referring to.

Over the next several months, Ms. Helm O'Dell's condition deteriorated. She stopped taking medications, refused to see her doctor, and accused various service providers of conspiring against her. On October 9, Ms. Helm O'Dell went missing from the assisted living facility. She was later found outside, cold and covered in burs. Ms. Helm O'Dell was taken to the hospital, where she exhibited signs of disorientation and hallucinations. Ms. Helm O'Dell was admitted to Eastern State Hospital on a 90-day involuntary commitment order. The order was later extended to 180 days.

While at Eastern State Hospital, Ms. Helm O'Dell received a letter from her brother, Glenn Helm. The following is a reproduction:

3

Dear Kristyan

I was shocked that you sold my property without my consent my life savings,

I want you to deliver the money to my brother Glenn Helm for safe keeping and invest as he sees fit.

I also want a copy of the power of attorney that you received from me,

Thanks so much

Please contact him at 509 941 8619

Sign _____

Dorothy write this letter in your own hand writing so the letter came from you not me.

My new phone number is 509 941 8619

CP at 19. Ms. Helm O'Dell shared the letter with her psychiatric social worker at the hospital. As can be seen above, it appeared Ms. Helm O'Dell had written her name at various places on the letter.

The social worker interpreted the letter as an attempt by Glenn Helm to gain control over Ms. Helm O'Dell's financial assets. The letter was shared with Ms. Calhoun. Upon receiving the letter, Ms. Calhoun decided to petition the Yakima County Superior Court for a guardianship.

Ms. Calhoun filed a guardianship petition on January 23, 2018. The petition stated Ms. Helm O'Dell was "diagnosed with dementia" and that she "generally suffers from

4

impairment of intellectual abilities such as attention, orientation, memory, judgment, and language." *Id*. at 2. Ms. Calhoun petitioned for appointment of "a certified professional guardian" who would assume a full guardianship over Ms. Helm O'Dell's person and estate. *Id*. at 4. She asked the superior court to appoint Amelia Clark as guardian ad litem (GAL) to investigate Ms. Helm O'Dell's need for a guardianship. She also requested Ms. Helm O'Dell be temporarily restrained from revoking the durable power of attorney during the pendency of the guardianship petition.

The court granted the initial requests made in the guardianship petition. Ms. Clark was appointed as GAL and Ms. Helm O'Dell was prohibited from revoking the power of attorney. After some confusion,[1] the court appointed Dan Young as Ms. Helm O'Dell's legal counsel.

Ms. Helm O'Dell was discharged from Eastern State Hospital on March 7, 2018, and placed on a less restrictive alternative at Gleed Orchard Manor in Yakima County. Ms. Helm O'Dell's prognosis on discharge was mixed. On the positive side, Ms. Helm

---

[1] When the GAL met with Ms. Helm O'Dell in February 2018, the GAL understood that Ms. Helm O'Dell wanted the GAL to find her an attorney. The GAL accordingly sought and facilitated the appointment of local attorney Marcus Fry on February 9. Dan Young, who practices primarily in Seattle, submitted a notice of appearance on Ms. Helm O'Dell's behalf the next week. After Ms. Helm O'Dell expressed a preference for Mr. Young, he was appointed as her counsel.

O'Dell had responded well to medication. But Ms. Helm O'Dell still had poor insight into her condition and she had a history of treatment nonadherence.

An initial report by Ms. Helm O'Dell's GAL indicated some level of guardianship of the person and estate was appropriate, based on Ms. Helm O'Dell's unstable mental health history.

During the pendency of the guardianship petition, Ms. Helm O'Dell filed suit against Ms. Calhoun in Kitsap County. Through her attorney, Mr. Young, Ms. Helm O'Dell alleged Ms. Calhoun breached fiduciary duties by selling Ms. Helm O'Dell's properties under market value. Ms. Helm O'Dell also alleged Ms. Calhoun and the real estate broker who purchased one of the properties engaged in a civil conspiracy and violated the Consumer Protection Act, chapter 19.86 RCW.

Ms. Calhoun filed a motion in the guardianship case to restrain Ms. Helm O'Dell's attorney from prosecuting the Kitsap County action until there was an adjudication of the guardianship petition. The motion was granted. Ms. Helm O'Dell subsequently filed for discretionary review of the order with this court.

On March 29, 2019, Ms. Calhoun filed a motion to dismiss the guardianship petition. The motion claimed that the petition had been filed in good faith, but that Ms. Calhoun could no longer afford the totality of pressure brought to bear by the

litigation tactics of Ms. Helm O'Dell's attorney. Ms. Calhoun requested the court award her attorney fees and costs. At that point, Ms. Helm O'Dell's estate was valued at only $27,000.

During the hearing on the motion to dismiss, the GAL reported she was torn about the proper course of action. She claimed Ms. Helm O'Dell met the criteria for a guardianship. But she was unsure that a guardianship would work, given the intense opposition of Ms. Helm O'Dell and her attorney. The GAL expressed concern that Ms. Helm O'Dell and her attorney had unprofessionally impugned the motivations of herself and Ms. Calhoun. The GAL also requested payment of fees.

Ms. Helm O'Dell's attorney expressed interest in dismissal, but first wanted a deposition of Ms. Calhoun and an evidentiary hearing in order to determine whether the guardianship petition had been brought in good faith. According to counsel, this information was necessary to make a ruling on attorney fees. As evidence of bad faith, counsel pointed out Ms. Calhoun's inaccurate claim that Ms. Helm O'Dell carried a diagnosis of dementia and the low prices generated for the sales of properties in Kitsap County.

On April 19, 2019, the superior court dismissed the guardianship petition without prejudice. It revoked Ms. Calhoun's power of attorney and the service agreement. It

7

terminated the preliminary injunction preventing Ms. Helm O'Dell from pursuing other litigation. The court also found Ms. Calhoun petitioned in good faith and awarded her limited attorney fees and costs of $5,000.00. The GAL was awarded $4,500.00. Although the court commented it was unsure of the motivation of Ms. Helm O'Dell's attorney, it did not make any findings regarding whether counsel had acted in good faith. On May 24, the court entered an order approving $68,885.39 in total fees and costs for Ms. Calhoun for the period of December 18, 2017, through April 24, 2019, of which $53,318.73 remained unpaid. The court authorized a judgment be entered as to the unpaid fees and costs, but that the judgment should not bear interest and expire four years after entry.

This court was apprised of the superior court's order of dismissal after the parties submitted argument on Ms. Helm O'Dell's motion for discretionary review. The court commissioner subsequently denied discretionary review on the basis that the matter was moot. Ms. Helm O'Dell then filed separate direct appeals of the dismissal order and the order approving attorney fees and costs and authorizing a judgment. She also filed a motion to modify the commissioner's order denying discretionary review. A panel of this court denied the motion to modify. Ms. Helm O'Dell's two direct appeals were consolidated for review and submitted to a panel of this court after oral argument.

8

ANALYSIS

Ms. Helm O'Dell contends the superior court should not have dismissed the guardianship petition without allowing for discovery and a hearing regarding the issue of Ms. Calhoun's bad faith. According to Ms. Helm O'Dell, the issue of bad faith is relevant to determining whether fees should be awarded to Ms. Calhoun and the GAL. Ms. Helm O'Dell claims the record contains several indicators of bad faith, including:

- Ms. Calhoun's statement in the petition that Ms. Helm O'Dell was diagnosed with dementia (she had actually been diagnosed with schizophrenia and a neurocognitive disorder);

- The petition's failure to explain why Ms. Calhoun requested Ms. Clark be appointed as GAL (Ms. Helm O'Dell surmises this omission is evidence of some sort of improper collusion); and

- The sale of Ms. Helm O'Dell's Kitsap County properties at below market value prices to a real estate agent who was a purported friend of Ms. Calhoun (Ms. Calhoun denies the allegation of friendship).

Issues regarding discovery and an award of attorney fees are reviewed for abuse of discretion. *T.S. v. Boy Scouts of Am.*, 157 Wn.2d 416, 423, 138 P.3d 1053 (2006); (discovery); *In re Guardianship of McKean*, 136 Wn. App. 906, 918, 151 P.3d 223 (2007)

9

(attorney fees). This standard is extremely deferential. A trial court does not abuse its discretion so long as its ruling has a tenable basis in law or fact. *T.S.*, 157 Wn.2d at 423-24. Ms. Helm O'Dell fails to meet this standard.

RCW 11.96A.150 authorizes the superior court to award costs, including reasonable attorney fees, to any party involved in a guardianship proceeding. Whether a petition is filed in good faith is relevant to the court's decision to award fees. *See* RCW 11.88.030(1), .090(10). Nevertheless, a superior court's authority to award fees is not entirely controlled by the issue of good faith.

The superior court awarded Ms. Calhoun and the GAL, Ms. Clark, fees and costs on the basis that the guardianship petition had been filed in good faith. The court had a tenable basis for this determination. At the time the petition was filed, Ms. Helm O'Dell was committed at Eastern State Hospital. Ms. Helm O'Dell had turned over a letter from her brother, Glenn Helm, suggesting Mr. Helm was attempting to obtain control of her financial assets for investment as he saw fit. This disclosure was shortly after Ms. Helm O'Dell had alleged abusive conduct by her brothers. While it was uncertain whether Glenn Helm was one of the brothers who was perpetrating abuse, it was reasonable for Ms. Calhoun and other providers to be concerned about the possibility of financial

exploitation. At that point, it was entirely appropriate for Ms. Calhoun to seek court supervision by filing a guardianship petition.

The contents of the guardianship petition were not indicative of bad faith. Ms. Calhoun was not seeking her own appointment as guardian. Ms. Calhoun may have been inexact in describing Ms. Helm O'Dell as being diagnosed with dementia instead of schizophrenia and a neurocognitive disorder. And she may have been incomplete in failing to explain why she requested Ms. Clark's appointment as a GAL. However, these missteps never misled the court and did not undermine the overwhelming evidence that the guardianship petition was filed in good faith.

The superior court did not abuse its discretion in denying Ms. Helm O'Dell's request for discovery and an evidentiary hearing. Ms. Helm O'Dell claims the facts before the court indicated a conspiracy by Ms. Calhoun and the GAL to strip Ms. Helm O'Dell of her meager life savings. We disagree. While Ms. Calhoun technically misstated Ms. Helm O'Dell's mental health diagnosis, the significance of Ms. Helm O'Dell's mental health struggles and memory lapses were similar to what a lay person would think of as dementia. In addition, the superior court readily understood Ms. Clark was suggested as a GAL because there were few eligible GALs in the county.

The court was reasonably concerned that any further discovery would only serve to increase the litigation costs and deplete Ms. Helm O'Dell's estate. Given both sides agreed to dismissal of the guardianship petition, the superior court wisely chose to end the proceedings.

Ms. Helm O'Dell also argues bad faith on the basis of the property sales in Kitsap County. That matter is being litigated in Kitsap County Superior Court. Regardless of whether Ms. Calhoun breached her fiduciary duty as an attorney-in-fact by selling Ms. Helm O'Dell's properties for less than market value, it was still appropriate for Ms. Calhoun to file for a guardianship instead of allowing the management of Ms. Helm O'Dell's estate to be administered in secrecy.

Ms. Helm O'Dell claims Ms. Calhoun's motion for a temporary restraining order, staying the Kitsap County case, was indicative of bad faith. We disagree. Ms. Calhoun's petition and the GAL report indicated Ms. Helm O'Dell met the criteria for a guardianship. An individual subject to a guardianship is often stripped of the right to sue or be sued other than through a guardian. *See* RCW 11.88.030(5)(b); RCW 11.92.060(1). It was entirely appropriate for the Kitsap County matter to be put on pause until Ms. Helm O'Dell's guardianship petition could be resolved.

The superior court's decision to award fees and costs was therefore appropriate.

12

Ms. Helm O'Dell also complains the superior court awarded excessive fees. According to Ms. Helm O'Dell, the fee award failed to account for Ms. Calhoun's bad faith and her own financial circumstances. Ms. Helm O'Dell's bad faith argument fails for the reasons already stated. In addition, the record reflects the court was aware of Ms. Helm O'Dell's limited financial resources. It was because of Ms. Helm O'Dell's limited resources that the court ordered the GAL fee be reduced and that the timing for payment of Ms. Calhoun's fees be alleviated. The fees requested by Ms. Calhoun and Ms. Clark were supported with documentation.

It is unfortunate that this litigation has resulted in depletion of Ms. Helm O'Dell's estate. But this is due at least in part to litigation decisions made by Ms. Helm O'Dell and her attorney. Ms. Helm O'Dell and her attorney could have reduced expenses by seeking county reimbursement of attorney and GAL fees. The record on appeal indicates the superior court had a reasonable basis for concern that Ms. Helm O'Dell's attorney was running up the costs of litigation. We find no reason to second guess the superior court's assessment of fees and costs.

## CONCLUSION

The superior court's order of dismissal and order approving attorney fees and costs are affirmed. We deny both parties' requests for attorney fees on appeal. While Ms.

13

Nos. 36820-3-III; 36826-2-III
*In re Guardianship of O'Dell*

Calhoun is the prevailing party, justice would not be served by awarding additional fees against Ms. Helm O'Dell's estate.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, J.

14